SECOND DIVISION

MARCH 31, 2000

1-99-2461

ERIK L. CAREY, ) Appeal from the

 ) Circuit Court

Plaintiff-Appellant ) of Cook County

 )

v. ) No. 96 L 05955

 )

K-WAY, INC., AND TEDD KAGIANAS,) The Honorable

 ) Kathy M. Flanagan,

Defendants-Appellees. ) Judge Presiding.

PRESIDING JUSTICE COUSINS delivered the opinion of the court.

A police officer took the plaintiff into custody after an officer of the corporation that owned the fast-food restaurant where he worked allegedly told the police officer that he suspected the plaintiff of having embezzled funds.  The plaintiff was later released without being charged.  He then filed suit against the corporation and its officer, alleging battery, false imprisonment and defamation.

The trial court dismissed the battery and defamation counts. The defendants then filed for summary judgment on the remaining false imprisonment count.  The plaintiff responded by filing two motions to strike the documents submitted by the defendants in support of their motion for summary judgment.  The trial court denied one of the motions to strike and then granted the motion for summary judgment.

We affirm.

FACTS

The plaintiff, Erik Carey, worked at a McDonald's restaurant in Park Forest.  His supervisor, Ron Malvin, considered him honest and hard working.  He started out as a crew person but was soon made a shift manager.  Carey's responsibilities as a manager included counting and handling money taken in during his shift.  At the end of their shifts, managers would count the money taken in, fill out deposit slips for the money from each register and put the money in a safe in the office.  Copies of the deposit slips remained at the store, while the originals went to the bank with the cash.  The night shift manager would lock the safe at the end of the day.  All the managers had keys to the office and knew the combination to the safe.

On February 8, 1996, Malvin was informed that there were discrepancies between the amount of money deposited at the bank and the amount taken in by the store on the two previous days.  The amount recorded on the deposit slips given to the bank was less than that on the purported copies at the office.  Malvin contacted Tedd Kagianas, an officer and part owner of K-Way, Inc.  (K-Way), the corporation that operated the Park Forest McDonald’s.  Kagianas went over to the restaurant to investigate the matter.

Meanwhile, when Carey came in that day, he says, he saw James Purifoy, a fellow shift manager, in a state of great distress.  Purifoy told him about the theft and said that he could not afford to lose his job because his girlfriend was pregnant.  Carey says he told Purifoy that he should not worry because if the theft happened on his shift he, rather than Purifoy, was the one who would probably be held responsible.

The people with authorized access to the deposit slips when the money was taken were Carey, Purifoy, Malvin and one other manager.  Carey, however, was only working on one of the two days during which money had disappeared.  Purifoy, however, worked both days.  According to Carey, the deposit slips clearly were not in his handwriting.

Kagianas arrived at the McDonald’s and examined the deposit slips.  About $300 had been taken on the sixth
, and about $450 on the seventh
.  Kagianas surmised that whoever had taken the money was probably a manager since the managers were familiar with the money handling system and had access to the safe.  Carey asked to talk with Kagianas to find out what was happening, but Kagianas would not talk to him.  Malvin talked to Purifoy, who told him that Carey had said that he would "take responsibility" for the theft.  After discussing the situation with Kagianas, Malvin called the police.

Officer Canady, a member of the Park Forest police department, came out to the restaurant.  Later he was joined by another officer.  Officer Canady averred that Kagianas and Malvin both told him that they suspected Carey of the theft and that he took Carey into the station for questioning on this basis.  Both Kagianas and Malvin deny having told Canady that they suspected Carey.  They add that the officers talked to Purifoy as well as to them.

Carey says that he was roughly handcuffed, taken to the police station and questioned.  After two hours of questioning he was locked in a holding cell for an hour and a half.  Then he was questioned some more.  He was released later after telling the police that he thought Cornelius Davis might be the embezzler.  Davis was another manager at the McDonald’s, and he roomed with Purifoy.  Carey says he knew that Davis was having trouble paying his bills and was in the process of being terminated for improper actions as a manager.

On May 24, 1996, Carey filed an action against Kagianas and K-Way for battery, false imprisonment and defamation.  The trial court dismissed the defamation count with prejudice.  The battery count was dismissed with leave to replead within 28 days, but Carey did not do so.  On June 7, 1999, the trial court granted the defendants’ motion for summary judgment as to the false imprisonment claim.  Carey now appeals from this order.

ANALYSIS

Our review of a summary judgment order is 
de
 
novo
.  
Soderlund Brothers, Inc. v. Carrier Corp.
, 278 Ill. App. 3d 606, 614, 663 N.E.2d 1, 7 (1995).  Summary judgment may be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 
Telenois, Inc. v. Village of Sachaumburg
, 256 Ill. App. 3d 897, 901, 628 N.E.2d 581, 584 (1993).  Summary judgment should not be granted if reasonable persons could draw divergent inferences from the undisputed facts. 
Telenois
, 256 Ill. App. 3d at 901, 628 N.E.2d at 584.  In making its ruling, the trial court should construe the pleadings depositions and affidavits in the light most favorable to the nonmoving party.  
Soderlund Brothers
, 278 Ill. App. 3d at 614, 663 N.E.2d at 7.

A person commits false imprisonment when he or she unreasonably restrains another's liberty against his or her will.  
Meerbrey v. Marshall Field & Co.
, 139 Ill. 2d 455, 474, 564 N.E.2d 1222, 1231 (1990).  In order to establish false imprisonment, a plaintiff must prove that: (1) the plaintiff was restrained or arrested by the defendant; and (2) the defendant acted without reasonable grounds to believe that the plaintiff committed an offense. 
Meerbrey
, 139 Ill. 2d at 474, 564 N.E.2d at 1231.  An arrest caused or procured by a private person is the same as an arrest by the private person.  
Karow v. Student Inns, Inc.
, 43 Ill. App. 3d 878, 881, 357 N.E.2d 682, 686 (1976).  An employer can be liable for false imprisonment when the employer's agent causes an unwarranted arrest of a third person. 
Dutton v. Roo-Mac, Inc.
, 100 Ill. App. 3d 116, 120, 426 N.E.2d 604, 607 (1981).

The defendants first argue that it is not clear that Carey was actually arrested, since the police did not take fingerprints, take mug shots or officially charge him.  We disagree.  In the first place, false imprisonment only requires that the plaintiff’s liberty be restrained, not necessarily that the plaintiff actually be placed under arrest.  This element is met if a person is compelled to go where he or she does not wish to go or to remain where he or she does not wish to remain. 
McKendree v. Christy
, 29 Ill. App. 2d 195, 199, 172 N.E.2d 380, 381-82 (1961); 
Lindquist v. Friedman's Inc.
, 285 Ill. App. 71, 77, 1 N.E.2d 529, 532 (1936).  In the second place, Carey was obviously under arrest.  It does not matter that he was not told he was under arrest or fingerprinted.  The standard for arrest is whether a reasonable person in the plaintiff’s place, innocent of any crime, would think that he or she was free to leave. 
People v. Hill
, 272 Ill. App. 3d 597, 602, 650 N.E.2d 558, 562-63 (1995). The suggestion that a reasonable person who was taken hold of, handcuffed, taken to the police station, questioned for hours and locked in a holding cell would think that he or she was free to leave is absurd.

The more difficult question is whether K-Way or Kagianas "procured" Carey's arrest.  Merely giving information to the police is insufficient in itself to constitute participation in an arrest. 
Dutton
, 100 Ill. App. 3d at 119, 426 N.E.2d at 607.  The defendants argue that, while they did give information to Canady, there is no evidence that they asked him to arrest Carey and that, as a result, summary judgment in their favor was appropriate on the issue of procurement.

But there is also a line of Illinois cases holding that where an officer relies solely on information provided by the defendant in making the arrest, the defendant may be held liable for false imprisonment.  
Dutton
, 100 Ill. App. 3d at 119, 426 N.E.2d at 607.  Carey argues that, according to Canady's affidavit, all the information relied upon in arresting Carey came from the defendants.  Thus, Carey concludes, the defendants should be liable under this principle.

In our view, even if Carey could show that the defendants were the sole source of the information relied upon by Canady in making the arrest, he would still have to show that they affirmatively instigated the arrest in some way.  The case generally cited as the source of the rule that liability can be imposed if one gives information solely relied upon by the police in making an arrest is 
Odorizzi v. A.O. Smith Corp.
, 452 F.2d 229, 231 (7th Cir. 1971). In order to better understand this rule, it is helpful to examine the cases cited by 
Odorizzi
 as exemplifying it.

One such case is  
Standard Oil Co. v. Davis
, 208 Ala. 565, 94 So. 754 (1922), which indicates that in certain circumstances an express request or order for the police to arrest the plaintiff is not necessary for liability. "Very clearly, we think, a person may be the responsible instigator of an arrest without expressly commanding, requesting or directing it." 
Standard Oil
, 208 Ala. at 567, 94 So. at 756. See 32 Am. Jur. 2d 
False Imprisonment
 § 41 (1995).  But the cases also indicate that it is always a requirement of liability that the defendant be shown to have suggested or encouraged the arrest in 
some
 way.  
Gerald v. Caterers, Inc.
, 382 S.W.2d 740 (Mo. App. 1964), another case cited by 
Odorizzi
, explains procurement of arrest thus:

"'In order to hold one liable in an action therefor, it is always necessary to be shown that such one instigated, caused or procured the arrest and confinement of the party complaining. * * * One who merely gives information regarding an offense justifying arrest does not incur liability * * * unless he goes beyond that point and instigates the arrest by suggestion and encouragement and countenances it.'" 
Gerald
, 382 S.W.2d at 744, citing 
Richardson v. Empire Trust
, 230 Mo. App. 580, 587-88, 94 S.W.2d 966, 970 (1936).

The primary Illinois case cited by 
Odorizzi
 for the "sole source" rule is 
Green v. No. 35 Check Exchange, Inc.
, 77 Ill. App. 2d 25, 222 N.E.2d 133 (1966).  In 
Green
, the defendant business was held liable for false imprisonment when the police relied solely on what its employees said in arresting the plaintiff.  
Green
, 77 Ill. App. 2d at 31, 222 N.E.2d at 136. But it is important to note that, in 
Green
, the defendant's employees clearly asked the police to arrest the plaintiff. 
Green
, 77 Ill. App. 2d at 31, 222 N.E.2d at 136.  Carey has not cited an Illinois false imprisonment case, nor have we found one at our own instance, in which a defendant was held liable for being the sole source of information relied upon by an arresting officer without the defendant also taking affirmative steps to convince the officer to make the arrest.

A suggestion of how to understand the sole source rule is contained in the recent case of 
Schmidt v. City of Lockport
, 67 F. Supp. 2d 938 (N.D. Ill. 1999).  The case holds that a defendant may be liable for false arrest even if he or she is not the arresting officer's sole source of information if the defendant goes beyond "providing information" and actually requests the arrest. 
Schmidt
, 67 F. Supp. 2d at 946. This seems to indicate that if a defendant is the sole source of information, a lesser degree of instigation may be necessary for liability, but if the defendant is not the sole source, an actual request or command is necessary.

The cases cited by 
Odorizzi
 show a rationale for this distinction in considerations of causation.  Even if conduct that seems to encourage arrest is shown, the plaintiff must also show that the defendant's conduct was a material factor in causing the officer to make the arrest in order to establish liability.  
Standard Oil
, 208 Ala. at 567, 94 So. at 756.  The more people a police officer interviews, the less likely it will be that a mere suggestion by the defendant could have caused the officer to make the arrest, or at least it will be more difficult to establish this.  But if the officer talks only to the defendant, it is much more likely that a suggestion could be responsible for the arrest.

The determination of whether a defendant's conduct constitutes an actual request that the plaintiff be arrested, encouragement for the plaintiff to be arrested or the mere giving of information must be made on a case-by-case basis (32 Am. Jur. 2d 
False Imprisonment
 § 41 (1995)) and is a question of fact (
Lindquist
, 285 Ill. App. at 79, 1 N.E.2d at 533).

Applying this reasoning to the instant case, we think that the trial court appropriately granted summary judgment to Kagianas in his individual capacity.  It is undisputed that Kagianas was not the sole source of the information on which the police relied in arresting Carey.  And there is no evidence in the instant case that he requested that Carey be arrested.  Thus, he did not procure the arrest.

The trial court's grant of summary judgment was also proper as to K-Way.  Carey has argued that K-Way should be liable based on the agency of Kagianas.  But since Kagianas has not committed the tort of false imprisonment, he has no liability for which K-

Way can in turn be held responsible under the doctrine of 
respondeat
 
superior
.  Even if Malvin is also considered, it seems the truly incriminating statements came from Purifoy, either directly or through his superiors.  Since the complaint and the briefs on appeal argue that K-Way is liable only on the basis of Kagianas' and perhaps Malvin's agency, we do not address the question of Purifoy's responsibility, if any, for the arrest, and whether that might be a basis for holding K-Way liable.

Because we have determined that the evidence shows that the defendants did not procure Carey's arrest, we need not further consider whether their suspicion that he committed the theft was reasonable.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McNULTY and GORDON, JJ., concur.