# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Poris v. Lake Holiday Property Owners Ass'n*, 2012 IL App (3d) 110131**

| | |
|---|---|
| Appellate Court Caption | KENNETH E. PORIS, Plaintiff-Appellant, v. LAKE HOLIDAY PROPERTY OWNERS ASSOCIATION, INC., GEORGE LEIDOLF, JAMES MORAN, STEVEN CONDON, DOROTHY FLEMING, JAMES BYRNE, MICHAEL IVANAUSKAS, CINDY KAMINKY and MATTHEW CLIFFORD, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-11-0131 |
| Filed | January 24, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for declaratory judgment and false imprisonment arising from an incident in which plaintiff was stopped for speeding by a security officer employed by defendant property owners' association, the trial court erred in entering summary judgment for defendant on the claims that the officer had no authority to stop and detain drivers and that amber lights could not be used on security vehicles, since those practices were unlawful, but summary judgment was properly entered for defendant on the claims based on the use of recording equipment and radar, because those practices did not violate Illinois law, and since plaintiff was restrained for violating defendant's rule on speeding, not a criminal law, summary judgment for defendant on the false imprisonment claim was reversed and the cause was remanded for entry of summary judgment for plaintiff on the liability portion of that claim and a determination of damages. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 09-CH-73; the Hon. Eugene P. Daugherity, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | John Brechin, of Addison, and Kenneth E. Poris (argued), of Somonauk, for appellant. |
| | Bruce Lyon (argued) and Shaun Raad, both of LaBarge, Campbell & Lyon, LLC, of Chicago, and Douglas A. Gift, of Herbolsheimer, Lannon, Henson, Duncan & Reagan, of La Salle, for appellees. |
| Panel | JUSTICE LYTTON delivered the judgment of the court, with opinion. Justices Holdridge and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff, Kenneth E. Poris, filed a 14-count complaint against defendants, Lake Holiday Property Owners Association, Inc. (Association), its board of directors, its chief of security and one of its security officers. Defendants filed a motion for summary judgment on all counts. Plaintiff filed a cross-motion for summary judgment on several counts. The trial court granted defendants' motion for summary judgment. On appeal, plaintiff argues that the trial court erred in granting summary judgment to the Association on his declaratory judgment and false imprisonment claims. We affirm in part, reverse in part and remand.

¶ 2                          BACKGROUND

¶ 3     Plaintiff owns property in Lake Holiday Development. He is a member of the Association. The Association is a not-for-profit Illinois corporation incorporated in 1965. Its articles of incorporation state the purposes for which it was formed:

"To promote and enhance the civic and social interests of the owners of real estate in Lake Holiday Development *** in so far as those interests relate to the maintenance of Lake Holiday. To acquire and hold real estate in its corporate name; to construct and maintain thereon buildings and structures of all types, roadways, beaches; and, to do all other things reasonably necessary thereofr [*sic*] ***."

¶ 4    Pursuant to its bylaws, the Association is governed by a board of directors. The board established the Lake Holiday Private Security Department, created a manual for the department and hired a chief of security, Matthew Clifford, who reports to the board.

¶ 5    The board is authorized to adopt rules and regulations that the board deems necessary for the best interests of the Association and its members. The board promulgated several rules pertinent to this case. The board adopted a rule authorizing "private security officers" to enforce the Board's rules and regulations, including the power to "issue citations for violations." Another rule prohibits members from obstructing officers:

> "No person shall knowingly resist or obstruct the performance by one known to the person to be a public safety officer of any authorized act within his or her official capacity. No person shall fail or refuse to comply with any lawful order or direction of any public safety officer authorized by the Lake Holiday Property Owners Association. A request to examine personal identification, such as a driver's license, in addition to a member's amenity pass shall be honored. CLASS A VIOLATION."

¶ 6    The board also approved a rule to regulate speed on Lake Holiday property:

> "Unless otherwise posted, the speed limit on all Lake Holiday roads shall be 25 miles per hour. Speed limits shall be strictly enforced. Violations from 1 to 10 mph over the posted speed limit are CLASS C VIOLATIONS. From 11 to 15 mph over the posted speed limit are CLASS B violations. From 16 mph or over the posted limit are CLASS A VIOLATIONS."

A Class A violation carries a $200 penalty for a first offense. A Class B violation is punishable by a $100 fine for a first offense. The fine for a Class C violation is $50 for a first offense.

¶ 7    The security department consists of several "private security officers" in addition to Clifford. The board purchased vehicles for the security department and equipped the vehicles with oscillating and flashing lights, radar units and audio and video recording equipment. According to the security department manual, "Traffic violation enforcement is one of many routine tasks performed by officers." All officers are required to wear a badge, uniform and "duty belt." A "duty belt" may "include weapons that the officer is certified to carry on duty."

¶ 8    On October 20, 2008, plaintiff was traveling on Farmer's Road, which is located in the Lake Holiday Development and owned by the Association. James Podnar, a security officer employed by the Association, measured plaintiff's speed, using a radar unit, at 34 miles per hour. Podnar activated the white and yellow oscillating lights on his security vehicle and pulled plaintiff over. The incident was videotaped from Podnar's security vehicle.

¶ 9    Immediately after he was pulled over, plaintiff exited his vehicle and engaged in conversation with Podnar. Podnar instructed plaintiff to get back in his vehicle and stay there for safety reasons. Plaintiff complied. Podnar then approached plaintiff's vehicle and requested an Association membership card and driver's license from plaintiff. Plaintiff provided the items to Podnar. Podnar took plaintiff's driver's license back to his vehicle. Four-and-a-half minutes later, Podnar exited his vehicle and approached plaintiff's vehicle.

¶ 10    As soon as Podnar reached plaintiff's vehicle, he informed plaintiff that he was being recorded. Podnar told plaintiff that he was issuing him a citation for speeding. When plaintiff

inquired whether Podnar was a police officer, Podnar responded that he worked for Lake Holiday Private Security and was not a police officer. Plaintiff repeatedly told Podnar that he had no authority to detain him. Podnar responded, "I am not detaining you." Podnar issued plaintiff a citation for speeding.

¶ 11 In February 2009, plaintiff filed a complaint against the Association, its board members, Clifford and Podnar. The complaint sought injunctive and declaratory relief, among other things. On February 19, 2009, plaintiff filed a motion for a temporary restraining order prohibiting defendants from pursuing his speeding citation.

¶ 12 At a hearing on plaintiff's motion, plaintiff testified that on October 20, 2008, while traveling on Farmer's Road, he saw white and amber oscillating lights behind him. He pulled over, believing that an emergency vehicle was behind him. Podnar, who was wearing a uniform and a "large belt" and had a "large club-like flashlight," got out of his squad car. Podnar told plaintiff in "a very authoritative, forceful voice" to get back in his vehicle. Plaintiff complied. Plaintiff testified that he did not feel free to leave. He believed he was under arrest. Following the hearing, the trial court denied plaintiff's motion for a temporary injunction.

¶ 13 Clifford testified that he has been an officer for the Association for 13 years and the chief of security for 9 years. For his entire employment with the Association, it has been the policy and practice of the security department to pull over drivers who are violating Association rules.

¶ 14 The Association has equipped security vehicles with video and audio recording equipment since 2000. It is the procedure of the department to inform drivers that they are being recorded. If a driver says he does not want to be recorded, the officer is to shut off the recording equipment.

¶ 15 In 2007, the security department began using white and amber flashing and oscillating lights on their security vehicles. The La Salle County sheriff's department instructed Clifford to stop using the white lights. The security department now uses only amber flashing and oscillating lights on their vehicles.

¶ 16 Neither Clifford nor any employees of the Association's security department have been given police powers by the La Salle County sheriff's office. Clifford has never been given any authority or permission by any police agency or the La Salle County Board to stop vehicles, use overhead lights, use radar to measure the speed of vehicles or make audio and video recordings on Association property.

¶ 17 On March 19, 2010, plaintiff filed a 14-count third amended complaint against defendants. Count I was a declaratory judgment action against the Association, seeking a declaration that the practices and procedures of the Association's security department are unlawful. Counts II and III alleged breach of fiduciary duty and willful and wanton conduct by the Association. Count IV alleged false imprisonment by the Association. Counts V through XII alleged breach of fiduciary duty and willful and wanton conduct by each individual board member and Clifford. Count XIII alleged nuisance by the Association, and count XIV sought an accounting by the Association.

¶ 18 Defendants filed a motion for summary judgment on all counts of plaintiff's third

amended complaint. Plaintiff filed a cross-motion for summary judgment on counts I, II, IV and XIII of his third amended complaint. The trial court granted defendants' motion for summary judgment.

¶ 19                                        ANALYSIS

¶ 20    Summary judgment is proper when the pleadings, affidavits, depositions and admissions of record, construed strictly against the moving party, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Johnson v. Salvation Army*, 2011 IL App (1st) 103323, ¶ 18. Summary judgment "is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt." *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). We review a trial court's grant of summary judgment *de novo*. *Johnson*, 2011 IL App (1st) 103323, ¶ 18.

¶ 21                              I. Declaratory Judgment

¶ 22    Plaintiff first argues that the trial court erred in granting summary judgment to the Association on his declaratory judgment cause of action because the Association's security department is not authorized by law to (A) stop vehicles and detain their drivers, (B) use amber oscillating lights on security vehicles, (C) record individuals whom they stop, or (D) use radar equipment to measure the speed of vehicles.

¶ 23                          A. Authority to stop and detain

¶ 24    Plaintiff argues that the security officers employed by the Association have no legal authority to stop and detain drivers.

¶ 25    Security guards occupy the same status as private citizens. *People v. Perry*, 27 Ill. App. 3d 230, 239 (1975). Section 107-3 of the Code of Criminal Procedure of 1963 authorizes ordinary citizens, including security guards, to make an arrest when they have reasonable grounds to believe "that an offense other than an ordinance violation is being committed." 725 ILCS 5/107-3 (West 2008). The express power to arrest granted in section 107-3 "necessarily implies the power to undertake less intrusive actions, such as a traffic stop or a brief detention to await pursuing police officers, so long as there are reasonable grounds to believe the person seized has committed an offense other than an ordinance violation." *People v. Shick*, 318 Ill. App. 3d 899, 904 (2001).

¶ 26    Thus, a security guard, with the powers of an ordinary citizen, may only stop and detain a person if he "has reasonable grounds to believe that an offense other than an ordinance violation is being committed." 725 ILCS 5/107-3 (West 2008); *Shick*, 318 Ill. App. 3d at 904. An "offense" is "a violation of any penal statute of this State." 720 ILCS 5/2-12 (West 2008); 725 ILCS 5/102-15 (West 2008). A "penal statute of this State" is a law enacted by the General Assembly that prohibits some act and prescribes a punishment. See *People v. Kleutgen*, 359 Ill. App. 3d 275, 279 (2005).

¶ 27    In this case, members of the security department stop and detain drivers for violating the

Association's rules, not Illinois statutes. Association rules are enacted by its board, not the General Assembly. The security officers are without legal authority to stop and detain drivers for violating Association rules. See 725 ILCS 5/107-3 (West 2008).

¶ 28   The security officers employed by the Association are attempting to assert police powers. They have neither the right nor the power to do so. They have only those powers that ordinary citizens have. See *Perry*, 27 Ill. App. 3d at 239. The practice of stopping and detaining drivers for Association rule violations is unlawful.

¶ 29                                    B. Use of amber lights

¶ 30   Plaintiff argues that the Association security department's use of amber oscillating and flashing lights on its vehicles is unlawful, pursuant to Illinois law. Defendants contend that the Association falls within a class authorized to use amber lights on its vehicles.

¶ 31   Section 12-215(b) of the Illinois Vehicle Code prohibits the of use of "amber oscillating, rotating or flashing lights" except on specified vehicles, including "[v]ehicles used by a security company, alarm responder, or control agency." 625 ILCS 5/12-215(b)(13) (West 2008).

¶ 32   The fundamental rule of statutory interpretation is to ascertain and effectuate the legislature's intent. *Beelman Trucking v. Illinois Workers' Compensation Comm'n*, 233 Ill. 2d 364, 370 (2009). The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. *Id.* When a statute leaves terms undefined, we may consult a dictionary to determine their plain and ordinary meaning. *Christmas v. Dr. Donald W. Hugar, Ltd.*, 409 Ill. App. 3d 91, 95-96 (2011).

¶ 33   The parties agree that the Association is not an "alarm responder" or "control agency." However, the Association contends that it is a "security company." Neither the Vehicle Code nor any other Illinois statute defines "security company." Thus, we must look to the plain and ordinary meaning of that phrase.

¶ 34   "Security" is defined as "the quality or state of being secure: as *** freedom from danger." Webster's Third New International Dictionary 2053 (1976). "Company" is defined as "an association of persons for carrying on a commercial or industrial enterprise or business." Webster's Third New International Dictionary 461 (1976). Thus, a "security company" is "an association of persons engaged in the business of keeping people secure and free from danger."

¶ 35   The Association is not a commercial enterprise in the business of "keeping people secure and free from danger." Rather, it is a property owners' association created "[t]o promote and enhance the civic and social interest of the owners of real estate in Lake Holiday Development *** in so far as those interests relate to the maintenance of Lake Holiday." Thus, the Association is not a "security company."

¶ 36   Since the Association is not an entity authorized by the Vehicle Code to use amber lights on its vehicles, the Association's use of those lights is unlawful.

## C. Use of recording equipment

¶ 38      Plaintiff argues that the security department's practice of recording drivers with audio and video recording equipment is a violation of the eavesdropping statute.

¶ 39      According to section 14-2 of the Criminal Code of 1961, a person commits eavesdropping when he "[k]nowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation *** unless he does so *** with the consent of all of the parties to such conversation or electronic communication." 720 ILCS 5/14-2(a)(1) (West 2008).

¶ 40      Consent under the eavesdropping statute may be either expressed or implied. *People v. Ceja*, 204 Ill. 2d 332, 349 (2003); see also *Hurst v. Board of Fire & Police Comm'n*, 2011 IL App (4th) 100964, ¶ 19 ("an individual can 'impliedly consent' to the monitoring of his communications for purposes of the eavesdropping statute"). Consent exists where a person's behavior manifests acquiescence or a comparable voluntary diminution of his or her otherwise protected rights. *Ceja*, 204 Ill. 2d at 349.

¶ 41      Implied consent may be deduced from the prevailing circumstances in a given situation. *Ceja*, 204 Ill. 2d at 350. The circumstances relevant to an implication of consent will ordinarily include language or acts that tend to prove that a party knows of, or assents to, encroachments on the routine expectation that conversations are private. *Id.* When an individual is told that his conversation is being recorded and, nevertheless, knowingly engages in conversation, there is no eavesdropping violation. See *id.*

¶ 42      Here, Clifford testified that individuals stopped by security officers are immediately informed that their conversations are being recorded. If a driver objects, the recording is stopped. If a driver does not object, he has impliedly consented to having his conversation recorded. See *Ceja*, 204 Ill. 2d at 350. The security department's use of recording equipment is not a violation of the eavesdropping statute.

## D. Use of radar

¶ 44      Plaintiff contends that the security department is prohibited from using radar units to determine the speed of vehicles on Association property, pursuant to supreme court precedent and the Illinois Vehicle Code.

¶ 45      In *People v. Lahr*, 147 Ill. 2d 379 (1992), the supreme court ruled that a police officer outside of his jurisdiction did not make a lawful citizen's arrest because he used tools of his office, including a radar gun, to determine that the defendant committed an offense. The court rejected the State's contention that use of the radar gun was not an assertion of police authority because ordinary citizens may use them, stating:

> "Although it is hypothetically possible for a private citizen to obtain a radar gun and conduct his own surveillance of a road, we believe the possibility of this happening is remote. We believe it is generally true that the use of radar guns for monitoring speed of traffic is limited to police officers." *Lahr*, 147 Ill. 2d at 383.

¶ 46      Nothing in *Lahr* prohibits anyone other than police officers from using radar equipment. In fact, the court in *Lahr* acknowledged that it was possible for people other than police

officers to obtain and use radar guns. Thus, the supreme court's decision in *Lahr* does not support plaintiff's position that the Association was prohibited from using radar equipment on its property.

¶ 47　　Plaintiff also contends that section 11-612 of the Illinois Vehicle Code (625 ILCS 5/11-612 (West 2008)) prohibits the Association's use of radar equipment. That section provides:

"Except as authorized in the Automated Traffic Control Systems in Highway Construction or Maintenance Zones Act, no photographic, video or other imaging system may be used in this State to record vehicle speeds for purposes of enforcing any law or ordinance regarding a maximum or minimum speed limit unless a law enforcement officer is present at the scene and witnesses the event." 625 ILCS 5/11-612 (West 2008).

Section 11-612 prohibits the video, photographic or other recording of vehicle speeds to enforce laws or ordinances with a narrow exception for highway construction or maintenance zones; it does not prevent the Association or any other entity from using radar equipment to detect speed. Thus, the Association's use of radar equipment to detect the speed of vehicles on its property is not unlawful.

¶ 48　　　　　　　　　　　　　　　E. Conclusion

¶ 49　　As set forth above, the Association's security department's practices of stopping and detaining drivers for violating Association rules and using amber flashing and oscillating lights on its security vehicles are unlawful. Thus, the trial court erred in granting summary judgment to the Association on those issues. We affirm the court's grant of summary judgment to the Association on plaintiff's claims that the Association's use of recording equipment and radar violate Illinois law. However, we reverse and remand for the trial court to grant summary judgment to plaintiff on his claims that the Association's practices of stopping and detaining drivers for rule violations and of using amber lights on their security vehicles are unlawful.

¶ 50　　　　　　　　　　　　　II. False Imprisonment

¶ 51　　A person commits false imprisonment when he or she unreasonably restrains another's liberty against his or her will. *Carey v. K-Way, Inc.*, 312 Ill. App. 3d 666, 669 (2000). In order to establish false imprisonment, a plaintiff must prove that "(1) the plaintiff was restrained or arrested by the defendant; and (2) the defendant acted without reasonable grounds to believe that the plaintiff committed an offense." *Id.*

¶ 52　　False imprisonment only requires that the plaintiff's liberty be restrained, not necessarily that the plaintiff actually be placed under arrest. *Carey*, 312 Ill. App. 3d at 669. This element is met if a person is compelled to go where he or she does not wish to go or to remain where he or she does not wish to remain. *Id.* at 669-70. The standard for arrest is whether a reasonable person in the plaintiff's place, innocent of any crime, would think that he or she was free to leave. *Carey*, 312 Ill. App. 3d at 670.

¶ 53　　Here, Podnar activated his overhead lights, causing plaintiff to pull over and stop. Podnar exited his vehicle, wearing a uniform, badge and duty belt containing weapons. He told

plaintiff to wait in his car and took possession of plaintiff's driver's license. Plaintiff remained in his car for several minutes until Podnar returned his driver's license, issued him a citation and told him he was free to leave.

¶ 54    Under these facts, plaintiff was restrained by Podnar. See *People v. Lewallen*, 247 Ill. App. 3d 350, 354 (1993) (taking driver's license and issuing ticket are evidence of arrest); *People v. Sinclair*, 281 Ill. App. 3d 131, 135 (1996) (requesting a driver's license and telling a person to stay in the car constitutes a seizure). When he is ordered by an individual wearing a uniform, badge and duty belt to wait in his vehicle without his driver's license while the officer prepares a citation, a reasonable person would conclude that he was compelled to stay in his car. See *People ex rel. Ryan v. Village of Hanover Park*, 311 Ill. App. 3d 515, 531 (1999). Since plaintiff's liberty was restrained, the first element of false imprisonment was met.

¶ 55    The second element of false imprisonment is that "the defendant acted without reasonable grounds to believe that the plaintiff committed an offense." *Carey*, 312 Ill. App. 3d at 669. The question is, did Podnar have probable cause to believe that plaintiff committed an "offense"? See *Carey*, 312 Ill. App. 3d at 669. An "offense" includes both felonies and misdemeanors. See *People v. Hill*, 28 Ill. App. 3d 719, 720 (1975).

¶ 56    Here, the evidence establishes that Podnar pulled over and detained plaintiff because he was driving in excess of the speed limit set forth in the Association's rules. The Association's rules are not felonies or misdemeanors. Thus, a violation of a rule or regulation is not an "offense." See *Hill*, 28 Ill. App. 3d at 720.

¶ 57    Because Podnar restrained plaintiff for violating an Association rule, not a criminal law, plaintiff established the elements necessary for his false imprisonment claim. The trial court erred in granting summary judgment to the Association on that count. We reverse and remand to the trial court to enter summary judgment in favor of plaintiff on the liability portion of his false imprisonment cause of action and to determine plaintiff's damages.

¶ 58                                    CONCLUSION

¶ 59    The order of the circuit court of La Salle County is affirmed in part and reversed in part, and the cause is remanded.

¶ 60    Affirmed in part and reversed in part; cause remanded.