SECOND DIVISION
April 5, 2011

No. 1-10-1743

| | | |
|---|---|---|
| TYKEESHA CHRISTMAS, Special Administrator | ) | Appeal from the |
| of the Estate of Vernice Christmas, | ) | Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 06 L 5624 |
| | ) | |
| DR. DONALD W. HUGAR, LTD., RONALD W. | ) | |
| HUGAR, LORETTO HOSPITAL, and T. | ) | |
| MACK, | ) | Honorable |
| | ) | Eileen Mary Brewer |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justices Karnezis concurred in the judgment and opinion.
Justice Harris dissented, with opinion.

**OPINION**

Plaintiff Tykeesha Christmas appeals from the dismissal with prejudice of her medical

malpractice complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-

619 (West 2008)) on the ground that the physician who authored a report in support of her

complaint as required by section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West

1998)) was not properly licensed. We affirm.

I. BACKGROUND

As relevant to this appeal, the facts of this case are straightforward. In 2004, Vernice

Christmas underwent surgery for an ailment in her right foot. The surgery was performed by

defendants Dr. Hugar and Dr. Mack, both Illinois-licensed podiatrists. Unfortunately, Vernice

died about two weeks after the surgery, allegedly due to complications from the operation.

Plaintiff, as administrator of Vernice's estate, filed the instant medical malpractice action against

defendants in 2006.

No. 1-10-1743

As required by section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 1998)), plaintiff's complaint included an affidavit by her attorney stating that the attorney had consulted "with a currently practicing podiatric physician," who had "determined in a written report *** that there is a reasonable and meritorious cause for the filing of this action" against defendants. A copy of the report was also attached, but the author of the report was not named. The author of the report stated that it was his "professional opinion *** based on a reasonable degree of medical/podiatric certainty" that the cause of action against defendants had merit. Specifically, the author identified "substandard omissions/actions" by defendants that were "deviations from acceptable standard of care and served as significant contributing factors" in Vernice's death.

After the complaint was filed, the parties proceeded to discovery and litigated the case for about four years. However, in 2010, about three months before the trial was scheduled to begin, defendants conducted the deposition of Dr. Randal Wojciehoski, whom plaintiff had identified as an expert witness expected to testify at trial. As it turned out, Dr. Wojciehoski was the author of the 2006 report. However, defendants discovered during the deposition that Dr. Wojciehoski had not been licensed as a podiatrist at the time that he authored the report. Dr. Wojciehoski graduated as a doctor of podiatric medicine in 1986, and he later became a doctor of osteopathy in 1989. However, Dr. Wojciehoski allowed his podiatric license to lapse sometime around 1990, and from that point on he maintained only his professional licenses as an osteopathic physician and emergency physician. Dr. Wojciehoski mentioned during his deposition that his Wisconsin osteopathic license, as well as the corresponding licenses that he held in other states, allowed him to provide a full-scope practice that included podiatric medical

2

services without the need for the additional podiatric license. Dr. Wojciehoski did not obtain a new podiatric license until shortly before the deposition in 2010, when he was retained as a defense expert for a podiatrist in a case unrelated to this one.

Less than two weeks after the deposition, defendants moved to dismiss the complaint under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)), arguing that plaintiff had failed to comply with section 2-622 because Dr. Wojciehoski was not a licensed podiatrist when he authored the report. Because a valid section 2-622 report is a statutory requirement for filing a medical malpractice action, defendants asserted that plaintiff's complaint must be dismissed. Plaintiff argued that Dr. Wojciehoski's license as an osteopathic physician satisfied the requirements of section 2-622 because under Wisconsin law, according to plaintiff, licensed osteopaths may practice podiatric medicine without obtaining a podiatric license.

Following full briefing and extensive oral arguments, the trial court found that plaintiff had not complied with section 2-622 and dismissed the complaint with prejudice. Plaintiff timely filed a notice of appeal, and this case is now before us.

## II. ANALYSIS

This appeal presents two issues: (1) whether plaintiff complied with the statutory requirements for pleading a medical malpractice claim under section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 2006)); and (2) if not, whether dismissal of the complaint with prejudice was warranted under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)).

### A. Compliance with Section 2-622

3

No. 1-10-1743

We initially examine whether plaintiff complied with the requirements of section 2-622, but we first must mention the current legal status of this section. Section 2-622 has been affected by several judicial decisions and legislative enactments, most recently in *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 250 (2010). See also *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 424-25, 450 (2008). See generally *Cookson v. Price,* 239 Ill. 2d 339, 341-42 (2010) (explaining the effect of the various judicial actions and the legislative amendments to section 2-622). The legislature is in the process of reenacting section 2-622 as it existed before *Lebron* (see 97th Ill. Gen. Assem., House Bill 2887, 2011 Sess.; 97th Ill. Gen. Assem., Senate Bill 1887, 2011 Sess.), but the legislation has not yet been passed as of the date of this appeal. Despite the convoluted procedural history of section 2-622, the specific language that is at issue in this appeal has never been altered, and so which version of the statute we refer to is immaterial. Although there are some textual differences between the version of section 2-622 as it currently stands and the version that existed prior to *Lebron*, the phrase "licensed in the same profession, with the same class of license" did not change and presumably will remain the same following reenactment by the legislature. 735 ILCS 5/2-622 (West 2008); 97th Ill. Gen. Assem., House Bill 2887, 2011 Sess.

As it currently stands, the portion of section 2-622 that is relevant to this case reads as follows:

"In any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the original and all copies of the

4

complaint, declaring one of the following:

      1. That the affiant has consulted and reviewed the facts of the case with a health professional who the affiant reasonably believes: (i) is knowledgeable in the relevant issues involved in the particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in the particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case; that the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action. If the affidavit is filed as to a defendant who is a physician licensed to treat human ailments without the use of drugs or medicines and without operative surgery, a dentist, a podiatrist, or a psychologist, or a naprapath, *the written report must be from a health professional licensed in the same profession, with the same class of license, as the defendant.*" (Emphasis added.) 735 ILCS 5/2-622(a) (West 1998).

The individual defendants in this case are podiatrists licensed under Illinois law, and therefore section 2-622 requires plaintiff's attorney to consult with a health professional who is licensed to practice podiatry prior to filing the lawsuit. The disagreement between the parties in this case is over the meaning of the term "license" as it is used in the statute. It is undisputed

that, at the time plaintiff filed her lawsuit in 2006, Dr. Wojchiehoski did not hold a podiatric license. However, plaintiff argues that Dr. Wojchiehoski's Wisconsin license as a doctor of osteopathy is sufficient to satisfy the licensing requirement of section 2-622 because Wisconsin law allows doctors of osteopathy to practice podiatric medicine without additional licensing. Defendants' position is that the statute means that authors of section 2-622 reports must hold a current podiatric license, regardless of any other qualifications they might have.

We interpret the meaning of a statute *de novo*, and the general principles of statutory construction are well known. See *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 35 (2009). Our primary objective is to give effect to the legislature's intent, and "[t]he most reliable indicator of the legislature's intent is the language of the statute, given its plain, ordinary, and popularly understood meaning." *Gardner v. Mullins*, 234 Ill. 2d 503, 511 (2009). When a statute leaves terms undefined, we may consult a dictionary to determine their plain and ordinary meaning. See *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 15 (1991). Additionally, where two statutes deal with the same subject matter, they must be considered together in order to give them a harmonious effect. See *People v. McCarty*, 223 Ill. 2d 109, 133 (2006). "[W]here an enactment is clear and unambiguous a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express. [Citations.]" *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990).

Section 2-622 does not define what it means by the term "license," so we turn to the dictionary. In the context of professional regulation, a license is defined as "a right or permission granted in accordance with law by a competent authority to engage in some business

6

or occupation, to do some act, or to engage in some transaction which but for such license would be unlawful." Webster's Third New International Dictionary 1304 (1981). In Illinois, the practice of podiatry is controlled by the Podiatric Medical Practice Act of 1987 (225 ILCS 100/1 *et seq.* (West 2008)). The public policy behind the Act is to ensure that "only qualified persons" practice podiatric medicine, and the Act declares that "no person shall practice podiatric medicine in the State of Illinois without a valid existing license to do so." 225 ILCS 100/1 (West 2008); see also 225 ILCS 100/11 (West 2008) (prohibiting unlicensed practice). The Act designates the Department of Financial and Professional Regulation (DFPR) as the body authorized to issue podiatric licenses, and it promulgates application and examination requirements as well as mandatory qualifications for receiving a license from the DFPR's licensing board. See 225 ILCS 100/8 through 10 (West 2008).

When section 2-622 of the Code of Civil Procedure is read in conjunction with the licensing regime described in the Podiatric Medical Practice Act of 1987, it is readily apparent that the term "license," as it is used in section 2-622 and as applied to podiatrists, refers to a license that has been obtained from the Department of Financial and Professional Regulation following an examination and satisfaction of other qualifications. Consequently, someone who holds a current podiatric license satisfies the licensing requirement of section 2-622. The statute does not contain any limiting language that would indicate that it can only be satisfied by an Illinois podiatric license, so we assume without deciding that a current podiatric license from another jurisdiction also satisfies section 2-622.

The problem here is that Dr. Wojchiehoski did *not* hold a podiatric license from any jurisdiction when he wrote the section 2-622 report, and so the question now becomes whether

his Wisconsin license as a doctor of osteopathy satisfies the statute's licensing requirement. Plaintiff has provided us with an extensive analysis of the intricacies of Wisconsin law on this point in her brief. Plaintiff's position rests on the premise that under Wisconsin's podiatry licensing regime a license is not required for someone who is "lawfully practicing within the scope of a license, permit, registration or certification granted by this state or the federal government." Wis. Stat. § 448.62 (2006). Plaintiff argues that because Dr. Wojchiehoski was licensed in Wisconsin as a physician and Wisconsin allows licensed physicians to engage in podiatric medicine as part of their practices (see Wis. Stat. § 448.01(5), (9) (2006)), then Dr. Wojchiehoski was therefore "licensed" to practice podiatry within the meaning of section 2-622.

However, based on the facts of this case we do not need to rely on Wisconsin law in order to resolve this issue because the podiatric licensing regimes of Illinois and Wisconsin are substantially in accord on this point. Compare Wis. Stat. § 448.62 (2006), with 225 ILCS 100/3 (West 2006) (stating that the Podiatric Medical Practice Act of 1987 does not prohibit "[a]ny person licensed to practice medicine and surgery in all of its branches in this State under the Medical Practice Act of 1987 from engaging in the practice for which he or she is licensed."). Given that section 2-622 is an Illinois statute, we determine the legislature's intent in light of Illinois law. As we see it, the dispositive question is this: could an Illinois-licensed doctor of osteopathy author a section 2-622 report for a claim against an Illinois-licensed podiatrist? Section 2-622 does not distinguish between licenses granted by different jurisdictions, and our analysis must be guided by the presumption that the legislature did not intend a statute to produce an absurd, inconvenient, or unjust result. See Brucker v. Mercola, 227 Ill. 2d 502, 514 (2007). If an Illinois-licenced osteopath can author a section 2-622 report in this situation, then

8

there is no reason based on the plain language of the statute to prohibit a Wisconsin-licensed osteopath from authoring one.

Section 2-622 was enacted as part of a package of medical malpractice reforms in 1985, and the underlying policy behind the statute is "to reduce the number of frivolous suits that are filed and to eliminate such actions at an early stage, before the expenses of litigation have mounted." *DeLuna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57, 65 (1992). The statute requires a health professional to review the plaintiff's claim to determine whether it is "reasonable and meritorious," and in the context of a medical malpractice action one of the crucial factual questions is whether the applicable medical standard of care has been violated. See *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 112 (2004) (listing the elements of a medical malpractice claim). This means that the initial review of a potential cause of action for medical malpractice under section 2-622 includes a review of the standard of care.

This consequently narrows the issue down to whether a physician can legally opine on the standard of care that podiatrists owe to their patients, and the supreme court answered that very question in *Dolan v. Galluzzo*, 77 Ill. 2d 279 (1979).[1] In *Dolan*, the supreme court considered whether a physician can testify as an expert witness in a medical malpractice action against a podiatrist, and, specifically, whether a physician who is not also licensed as a podiatrist is competent to testify about the standard of care applicable to podiatric medicine. See *id.* at 281. Noting that a "practitioner of a particular school of medicine is entitled to have his conduct

---

[1] Illinois law treats doctors of osteopathy synonymously with medical doctors (225 ILCS 62/5 (West 2008)), and both types of doctor must be licensed as physicians under the Medical Practice Act of 1987 (225 ILCS 60/1 *et seq.* (West 2008)) in order to practice medicine in Illinois.

tested by the standards of his school," the supreme court held that "in order to testify as an expert on the standard of care in a given school of medicine, the witness must be licensed therein." *Id.* at 283, 285; see also *Gill v. Foster*, 157 Ill. 2d 304 (1993) (reaffirming *Dolan*'s holding); *Jones v. O'Young*, 154 Ill. 2d 39 (1992) (same).

The supreme court based its holding in part on the fact that the legislature has established separate regulatory regimes for physicians and other schools of medicine (for example, dentistry or optometry), observing that "[w]e simply are not disposed to provide for what, in effect, may result in a higher standard of care when the legislature, by recognizing various schools of medicine, has not done so. To do so would not only be unfair to podiatrists (*i.e.*, to allow practitioners of other schools to testify regarding the standard of care podiatrists owe), but it would also assume that science and medicine have achieved a universal standard of treatment of disease or injury." *Dolan*, 77 Ill. 2d at 284. The supreme court recognized, however, that physicians may also be licensed podiatrists, and in that situation they are competent to evaluate compliance with the standard of care for podiatry. See *id.* at 285.

*Dolan* dealt with expert testimony at trial, but the same principles apply to the review of a potential cause of action pursuant to section 2-622. Among other things, the underlying policy of the statute is to provide a preliminary review of a potential malpractice action in order to determine whether the defendant has fallen short of the applicable standard of care. Under *Dolan*, the only health professionals that are legally competent to evaluate the standard of care for podiatric medicine at trial are licensed podiatrists, and physicians who are licensed under a different regulatory regime cannot evaluate whether defendant podiatrists have complied with the standard of care unless they are also licensed as podiatrists. It follows that physicians cannot

10

author a section 2-622 report that deems a cause of action against defendant podiatrists to be "reasonable and meritorious" because physicians are not legally competent to evaluate the standard of care for podiatric medicine and opine whether that standard has been met.

Any contrary result would be absurd, given the legislative policy underlying section 2-622 of weeding out unmeritorious lawsuits at the earliest possible point. As the supreme court noted in *Dolan*, one problem with allowing physicians to testify about the podiatric standard of care is that it may result in the evaluation of a podiatrist's actions under a higher standard than is actually common in the profession. See *id.* at 282. Analogously, the possibility exists that physicians who author section 2-622 reports may deem lawsuits meritorious based on the perceived violation of the standard of care applicable to physicians, allowing suits to proceed, yet when the podiatric standard of care is applied at trial by qualified podiatrist expert witnesses the lawsuits are found to be meritless. Such a result would be contrary to section 2-622's objective of ensuring that only malpractice claims with some merit are filed to begin with, and it would therefore be unreasonable not to require that the health professional who initially reviews a case for merit is legally competent to opine on the standard of care that is at issue in a particular case. By mandating that the reviewing health professional be licensed in the same profession as the defendant, this is precisely what section 2-622 requires.

Additionally, our reading of the legislature's intent regarding the licensing requirement is reinforced when we consider the language of the version of section 2-622 that was in effect before *Lebron* and is currently in the process of reenactment. In that version, one of the

11

requirements for section 2-622 report authors was that they meet the expert witness standards[2] promulgated in section 8-2501 of the Code of Civil Procedure (735 ILCS 5/8-2501 (West 2008)), which includes the nearly identical consideration of "whether the witness is licensed in the same profession with the same class of license as the defendant." Given the parallel language of the two statutes, the legislature undoubtably intended for the same professional qualification standards to apply to both section 2-622 report authors and expert witnesses at trial.

In light of the above discussion, we hold that section 2-622 requires that the author of a report must hold a current podiatric license when the defendant in the case is a licensed podiatrist, and it is not sufficient for the author to be licensed only as a physician. In this case, although Dr. Wojchiehoski was licensed as an osteopathic physician in Wisconsin at the time that he authored the section 2-622 report, he did not hold a podiatrist's license and therefore was not a health professional licensed in the same profession, with the same class of license, as defendants within the meaning of section 2-622. As a result, plaintiff's section 2-622 report was defective.

### B. Dismissal With Prejudice

We next consider whether dismissal of the complaint with prejudice was warranted. Under section 2-622, the failure to file a health professional's report or an attorney's affidavit that complies with the statute is grounds for dismissal under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)). See 735 ILCS 5/2-622(g) (West 1998). However, section 2-622 does not mandate dismissal with prejudice for every violation of its requirements.

---

[2] This language rephrased section 2-622's old requirement that the report author be "qualified by experience or demonstrated competence in the subject of the case." 735 ILCS 5/2-622(a)(1)(iii) (West 1998).

No. 1-10-1743

See *McCastle v. Mitchell B. Sheinkop, M.D., Ltd.*, 121 Ill. 2d 188, 194 (1987). Whether a cause of action should be dismissed with or without prejudice for violation of section 2-622 is a decision that is left to the sound discretion of the trial court.[3] See *id.* We will not reverse a trial court's decision on this issue absent an abuse of discretion (see *id.*), and an abuse of discretion only occurs when the trial court's decision is "arbitrary, fanciful, or unreasonable or when no reasonable person would take the same view" (*Sbarboro v. Vollala*, 392 Ill. App. 3d 1040, 1055 (2009) (citing *People v. Illgen*, 145 Ill. 2d 353, 364 (1991))).

The test in this type of situation is whether the trial court considered the specific facts and circumstances of the case before dismissing the complaint and denying plaintiff leave to amend. See *Peterson v. Hinsdale Hospital*, 233 Ill. App. 3d 327, 330 (1992); accord *Ingold v. Irwin*, 302 Ill. App. 3d 378, 384 (1998). Among the factors that a trial court considers in determining whether to grant leave to amend a complaint are "whether the amendment would cure a defect in the pleadings; whether the other party would be prejudiced or surprised by the proposed amendment; timeliness of the proposed amendment; and whether there were previous opportunities to amend the pleadings." *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 467-68 (1992).

This case was litigated for four years before the section 2-622 violation was uncovered during Dr. Wojchiehoski's deposition, and defendant noted during oral arguments on the motion to dismiss that the deficiency probably never would have been revealed had plaintiff not

---

[3] There is also authority for the proposition that a trial court may excuse a section 2-622 violation and need not dismiss a complaint at all pursuant to section 2-619. See, *e.g.*, *McCastle*, 121 Ill. 2d at 194-95 (Miller, J., specially concurring) (citing *A.E. Stanley Manufacturing Co. v. Swift & Co.*, 84 Ill. 2d 245, 252 (1980)). However, that scenario is not presented by the facts of this case, so we will not explore it further at this time.

identified Dr. Wojchiehoski as an expert witness for the upcoming trial. Due to this fact, the trial court found during the hearing that the defendants did not have notice of the improper 2-622 report and that their motion to dismiss was timely, even though it was not brought until nearly the end of discovery.

More importantly, at no time during the pendency of the litigation did plaintiff attempt to correct the section 2-622 deficiency in her pleadings, and at no point did she attempt to demonstrate good cause for why she failed to bring this to the court's attention and remedy the matter. *Cf. Calamari v. Drammis*, 286 Ill. App. 3d 420, 433 (1997) (plaintiff did not show good cause for her failure to file a proper section 2-622 report, despite multiple extensions). In fact, early on in the case plaintiff filed an amended complaint yet did not file a corrected section 2-622 report authored by a qualified expert. It was only after the deficiency was discovered by defendants and only after the motion to dismiss was granted that plaintiff sought leave to amend her complaint and correct the deficiency.

Even then, plaintiff only sought to amend the complaint in order to demonstrate that Dr. Wojchiehoski is currently licensed as a podiatrist. The trial court captured the essence of the problem succinctly, observing at the hearing:

"[THE COURT]: You [plaintiff] should have checked to see whether he had a license not; and if the court – – if his had been brought to a court's attention in 2006, the court would have said get yourself a proper expert witness. You don't have one.

\*\*\*

[Plaintiff's Counsel]: \*\*\* I'm asking for leave to amend the 2.622 [*sic*] to

14

have Dr. Wojchiehoski then show his license. He has a license.

        [THE COURT]: He didn't have a license in 2006."

As the trial court understood, amending the complaint in the manner that plaintiff asked for is insufficient to cure the problem because it cannot change the fact that Dr. Wojchiehoski was not a licensed podiatrist in 2006 when he wrote the section 2-622 report. *Cf. Crull v. Sriratana*, 388 Ill. App. 3d 1036, 1046 (2009) (observing that an unlicensed physician "was not qualified to author a section 2-622 report, and the defect could not have been cured by amending the report"). The mere fact that Dr. Wojchiehoski is now licensed as a podiatrist cannot retroactively cure the defect in a report that was dated and filed four years ago. Of course, that is not to say that such a defect can never be cured, and we take no position on that question. Rather, our point is only that plaintiff's proposed solution (which was, importantly, the only solution that plaintiff offered) does nothing to address the fundamental problem of the fact that her lawsuit, as filed, was supported by a report authored by someone who was at the time not legally authorized to do so.

Finally, the section 2-622 violation here was not a "minor technical error" that might excuse plaintiff's failure to strictly comply with the statute. *Apa v. Rotman*, 288 Ill. App. 3d 585, 589-90 (1997) ("[W]here a minor technical error is involved, permitting a plaintiff to amend more closely furthers the purpose of section 2-622 than dismissing with prejudice."); see also *Cammon v. West Suburban Hospital Medical Center*, 301 Ill. App. 3d 939, 950 (1998) (finding abuse of discretion where, in a case involving multiple defendants, the plaintiff filed a section 2-622 report that mistakenly omitted a discussion of the deficiencies of some defendants). Plaintiff did not accidentally fail to comply with a technicality, but instead based her complaint against

defendants on the professional opinion of someone who was not legally qualified to opine on the standard of care for podiatric medicine. Section 2-622's goal of weeding out meritless lawsuits before they are filed depends on compliance with the statute's requirement that malpractice lawsuits be vetted by a qualified health professional. Plaintiff's submission of a section 2-622 report that was prepared by someone who was not qualified to author such a report in support of this particular cause of action is directly contrary to the purpose of the statute and is not a mere technical error.

We recognize that dismissal with prejudice is a harsh result, given that this case was close to trial and that the parties do not argue on appeal that plaintiff's claim lacks merit. As the dissent rightly observes, there is also no suggestion in the record that defendants would have been prejudiced by allowing plaintiff to amend her complaint in order to comply with the statute. See *post*, slip op. at 21 (Harris, J., dissenting). Although these are valid and well-taken points, we are mindful of the deference that we must accord to the trial court when we review a decision that is committed to its sound discretion. We are bound by the standard of review, and in this situation we review the trial court's decision only for abuse of discretion, not *de novo*. See *McCastle*, 121 Ill. 2d at 194. Abuse of discretion is the "most deferential standard of review available with the exception of no review at all," (*People v. Coleman*, 183 Ill. 2d 366, 387 (1998)), and the only real question on review is whether the trial court "appli[ed] the proper criteria when it weighed the facts." (*Paul v. Gerald Adelman & Assocs.*, 223 Ill. 2d 85, 99 (2006).

This issue was well briefed and extensively argued by the parties before the trial court, and the trial court was fully aware of the relevant facts and circumstances of this particular case

No. 1-10-1743

when it decided to dismiss the complaint and to deny plaintiff leave to amend. At best, the lack of prejudice to defendants satisfies only one of the four factors that the supreme court has specified should be considered when deciding whether to grant leave to amend a complaint, and plaintiff's proposed amendment fell short on the other three. See *Lee*, 152 Ill. 2d at 467-68. During the hearing, the trial court specifically noted that plaintiff's proposed amendment could not cure the section 2-622 defect and that the amendment came four years after the original filing, both of which are important factors that should be considered in this situation. *See id.* The record demonstrates that the trial court considered the correct criteria (*Paul*, 223 Ill. 2d at 99), and its decision to deny leave to amend consequently cannot be considered "arbitrary, fanciful, or unreasonable" (*Illgen*, 145 Ill. 2d at 364). As a result, we cannot say that the trial court abused its discretion in dismissing the complaint with prejudice.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's order dismissing the plaintiff's complaint with prejudice.

Affirmed.

JUSTICE HARRIS, dissenting.

17

No. 1-10-1743

I respectfully dissent.

The trial court abused its discretion in issuing the order of dismissal because it failed to apply the well-established principle that Section 2-622 is to be liberally construed and that amendments to complaints in medical malpractice actions are to be liberally granted so that cases of this nature are decided based upon the substantive rights of the parties, not pleading technicalities.

Section 2-622 does not require that medical reports submitted at the pleading stage to support medical negligence claims against podiatrists be authored by a podiatrist licensed in Illinois. The statute does not define the terms "same profession" or "same class of license." Those words used in the statute are to be given their generally accepted and ordinary meaning. Webster's primary definitions for "license" are "permission to act;" "freedom of action;" and "permission granted by competent authority to engage in a business, occupation, or activity otherwise unlawful." Webster's Seventh New Collegiate Dictionary 487 (1971). Dr. Wojciehoski, employing these definitions, satisfied the requirements of Section 2-622.

Dr. Wojciehoski earned his degree as a doctor of podiatry in 1986. In 1990 he earned a degree of doctor of osteopathy and was licensed by the Wisconsin medical examining board. He was permitted to engage in the practice of medicine and surgery. In Wisconsin "podiatry" is a "branch or system" of the practice of medicine and surgery. He was not required to have a separate license to practice podiatry or podiatric medicine, nor was there any prohibition against his referring to himself as a "podiatrist", "doctor of podiatry" or "D.P.M." Dr. Wojciehoski, as a licensed physician, was both permitted and authorized by the State of Wisconsin to engage in the

18

practice of podiatry and was exempt from any requirement that he have a separate and distinct podiatry license as a condition to do so. The Wisconsin licensure scheme is wholly consistent with *Dolan v. Galluzzo,* 77 Ill 2d 279, 285 (1979), where our supreme court recognized that a "physician or surgeon may also be a licensed podiatrist and may be sufficiently qualified to testify as to the standard of care owed by podiatrists." Wisconsin law does not permit every M.D. or D.O. in Wisconsin to declare themselves to be podiatrists. Wisconsin physicians are permitted to do so, without additional licensure, only if they are also doctors of podiatric medicine. There is no dispute that Dr. Wojciehoski earned his degree as a doctor of podiatry in 1986. If a licensed physician who is also a podiatrist can testify at trial with regard to the standard of care of a podiatrist, this same person is equally qualified to author a section 2-622 report. Dr. Wojciehoski, as a D.P.M., and the defendants are of the same school of medicine. The section 2-622 report was authored by a health care professional who had the same training and professional credentials as defendants, who was judging their conduct based on the standards applicable to podiatrists. Courts of our state have repeatedly articulated that the technical requirements of section 2-622 should not interfere with the spirit or purpose of the statute; the absence of strict technical compliance with the statute in this case is one of form, not substance, and should not be applied to deprive the plaintiff a trial on its merits. See, *e.g.*, *Comfort v. Wheaton Family Practice,* 229 Ill App 3d 828, 832 (1992); *Apa v. Rotman,* 288 Ill. App. 3d 585, 589 (1992).

Notwithstanding my colleagues adopting the trial court's view that Dr. Wojciehoski's license was inadequate, the dismissal of the case with prejudice and without leave to file an amended pleading is unreasonable and must be reversed as an abuse of the court's discretion.

19

No. 1-10-1743

The purpose of section 2-622 is to discourage frivolous litigation. *McCastle v. Sheinkop*, 121 Ill 2d 188, 193 (1987). The record here is absent any suggestion that plaintiff's survival action and wrongful death claims against these defendants are in any manner frivolous. To the contrary, the complaint sets out a medical malpractice event which allegedly caused the death of plaintiff's decedent. A death case is certainly a serious one and in no way frivolous. It is well settled that a failure to comply with section 2-622 does not mandate the dismissal of the case with prejudice. To that end, medical malpractice pleadings should be liberally allowed so that the case may be decided on its merits rather than procedural technicalities. *Cato v. Attar,* 210 Ill. App. 3d 996, 999 (1991). Sound exercise of discretion mandates that the plaintiff be at least afforded the opportunity to amend her complaint to comply with section 2-622 before her complaint is dismissed with prejudice. See *Cammon v. West Suburban Hospital Medical Center,* 301 Ill. App. 3d 939, 949-950 (1998) (allowing a plaintiff to amend a medical malpractice complaint where the plaintiff failed to attach the required affidavit and report of a health care professional).

The majority's reliance on *Crull v. Sriratana,* 388 Ill. App. 3d 1036 (2009), to affirm the trial court's dismissal of this case without a trial on its merits is misplaced and easily distinguished. In *Crull,* the plaintiff's initial complaint contained no affidavit or medical report, and neither was filed within the 90 day extension granted under the statute. Counsel refused to provide the name of the authoring medical professional in later filed reports. Other reports were tendered by a doctor whose license had been revoked. Here, plaintiff's counsel's affidavit and the medical report upon which he relied were timely filed. There never was an attempt to hide Dr. Wojciehoski's identity, qualifications, or license from defendants or the court. Most

20

importantly, unlike the consultant in *Crull,* Dr. Wojciehoski was a fully licensed doctor of osteopathy, practicing medicine and surgery allowed by that licensing which included podiatry, as well as his having earned a podiatry degree.

Upon the plaintiff's filing of her complaint in 2006, the defendants answered and the parties engaged in significant discovery. Over the next four years written interrogatories, requests for production of documents, the issuance of subpoenas to third parties, the tendering of requests to admit, and noticing and taking depositions took place. Shortly before the case trial date of August 23, 2010, the defendants took the deposition of Dr. Wojciehoski and learned of the licensing technicality. He testified that he had a podiatry license in 1986 but in 1990 he obtained his medical licensing and the podiatry license was no longer necessary for his continued practice of podiatry. He also stated that in 2010 he obtained a podiatry license, still valid, as he was retained as an expert by a defense attorney in another matter.

The granting of defendant's motion to dismiss this case on the eve of trial after years of preparation and both parties ready to try it on its merits was wrong and unreasonable. Denying plaintiff the opportunity to correct the technical defect in the medical report was unreasonable, rash and arbitrary. It ignores the purpose of section 2-622 and the rules of liberal construction and amendment which attend it. As such there was an abuse of discretion. We need not give deference to the trial court where its action is unreasonable. The defendant would not have been prejudiced in the slightest if the court had allowed the amendment to the section 2-622 affidavit and order the trial to proceed on its merits.

Accordingly, I would remand this case to the trial court to vacate it's dismissal order, allow the filing of an amended section 2-622 affidavit and proceed to trial on the merits.