# Illinois Official Reports

## Appellate Court

*People v. Robinson*, 2015 IL App (4th) 130815

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD J. ROBINSON, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-0815 |
| Filed | October 2, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Douglas County, No. 07-CF-64; the Hon. Michael G. Carroll, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Susan M. Wilham, all of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Kevin P. Nolan, State's Attorney, of Tuscola (Patrick Delfino, David J. Robinson, and Perry L. Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion.<br>Justices Knecht and Holder White concurred in the judgment and opinion. |

¶ 1     Defendant, Reginald J. Robinson, through his appointed counsel, filed an amended petition for postconviction relief. The State moved to dismiss the amended petition on the ground of untimeliness (see 725 ILCS 5/122-1(c) (West 2008)) and the trial court granted the motion. Defendant appeals. In his view, the court should have excused the lateness of his petition because he "allege[d] facts showing that the delay was not due to his *** culpable negligence." *Id.*

¶ 2     Specifically, the fact defendant alleged was that his counsel on direct appeal had failed to notify him of the issuance of our decision on direct appeal. In our *de novo* review (see *People v. Coleman*, 183 Ill. 2d 366, 378 (1998)), we are unconvinced that this fact shows a lack of culpable negligence on defendant's part. We are unconvinced because defendant provides us no analysis of the statute of limitation, section 122-1(c) of the Post-Conviction Hearing Act (725 ILCS 5/122-1(c) (West 2008)), and unless we know, from such an analysis, what triggered the running of the period of limitation (whatever that period was), we are in no position to decide whether defendant's unawareness of our decision on direct appeal serves as a valid excuse for the admitted lateness of his postconviction petition. Therefore, we affirm the trial court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4     On December 11, 2007, on the basis of stipulated evidence in a bench trial, the trial court found defendant guilty of unlawful trafficking in cannabis (720 ILCS 550/5.1 (West 2006)).

¶ 5     On February 14, 2008, the trial court sentenced defendant to 20 years' imprisonment and fines totaling $28,000.

¶ 6     On February 11, 2009, on direct appeal, we affirmed the trial court's judgment. *People v. Robinson*, No. 4-08-0353, slip order at 2 (Feb. 11, 2009) (unpublished order under Supreme Court Rule 23).

¶ 7     Defendant did not petition the Supreme Court of Illinois for leave to appeal.

¶ 8     On July 26, 2010, defendant filed a *pro se* petition for postconviction relief. The trial court appointed counsel, who filed an amended petition. According to the amended petition, the "delay" in the filing of the petition was due to appellate counsel's failure to notify defendant of the issuance of our decision on direct appeal.

¶ 9     On January 17, 2012, the trial court granted the State's motion to dismiss the amended postconviction petition on the ground of untimeliness. See 725 ILCS 5/122-1(c) (West 2008).

¶ 10    Defendant appealed and, on June 19, 2013, we remanded the case for the limited purpose of demonstrating compliance with Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984). *People v. Robinson*, 2013 IL App (4th) 120254-U, ¶ 34.

¶ 11    On remand, postconviction counsel filed an amended certificate demonstrating compliance with Rule 651(c). The dismissal on the ground of untimeliness stood.

¶ 12    This appeal followed.

## II. ANALYSIS

The parties agree that defendant was late in filing his petition for postconviction relief, but they disagree whether the lateness was due to "culpable negligence" on his part. 725 ILCS 5/122-1(c) (West 2008). Section 122-1(c) excuses the lateness of a postconviction petition if "the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." *Id.*

Because the *degree* of lateness (how late the petition was) is relevant to the question of "culpable negligence" (see *People v. Hampton*, 349 Ill. App. 3d 824, 828 (2004)), we need to know the deadline for filing the postconviction petition.

The State tells us the deadline was September 18, 2009, but the State does not explain how it determined that deadline. The parties agree the relevant sentence in section 122-1(c) is as follows: "If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2008). But the parties treat this sentence from section 122-1(c) as if its application and effect were self-explanatory. They provide no explication of section 122-1(c).

The current version of section 122-1(c) is rather new, and we have found only one published decision, *People v. Wallace*, 406 Ill. App. 3d 172 (2010), that interprets the sentence in question: "If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition ***." 725 ILCS 5/122-1(c) (West 2008). *Wallace* interprets this sentence as having the same meaning as the pre-amended statute, despite the presumption that a material amendment of an unambiguous statute changes the law (see *People v. Woodard*, 175 Ill. 2d 435, 449 (1997)). Specifically, *Wallace* interprets the terms "certiorari petition" and "petition for certiorari" in the current version of the statute (725 ILCS 5/122-1(c) (West 2008)) as being synonymous with the term "Petition for Leave to Appeal to the Illinois Supreme Court" in the previous version of the statute (725 ILCS 5/122-1(c) (West Supp. 2003)). *Wallace*, 406 Ill. App. 3d at 176.

Before section 122-1(c) was amended by Public Act 93-972, § 10 (eff. Aug. 20, 2004), it provided as follows:

> "(c) Except as otherwise provided in subsection (a-5) [(725 ILCS 5/122-1(a-5) (West Supp. 2003))], if the petitioner is under sentence of death, no proceedings under this Article shall be commenced more than 6 months after the denial of a petition for certiorari to the United States Supreme Court on direct appeal, or more than 6 months from the date for filing such a petition if none is filed, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.
>
> When a defendant has a sentence other than death, no proceedings under this Article shall be commenced more than 6 months after the denial of the Petition for Leave to Appeal to the Illinois Supreme Court, *or more than 6 months from the date for filing such a petition if none is filed*, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.
>
> This limitation does not apply to a petition advancing a claim of actual innocence." (Emphasis added.) 725 ILCS 5/122-1(c) (West Supp. 2003) (as amended by Pub. Act 93-605, § 15 (eff. Nov. 19, 2003)).

- 3 -

¶ 19    As amended by Public Act 93-972, section 122-1(c) now provides:

"(c) Except as otherwise provided in subsection (a-5) [(725 ILCS 5/122-1(a-5) (West 2008))], if the petitioner is under sentence of death and a petition for writ of certiorari is filed, no proceedings under this Article shall be commenced more than 6 months after the conclusion of proceedings in the United States Supreme Court, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.

When a defendant has a sentence other than death, no proceedings under this Article shall be commenced more than 6 months after the conclusion of proceedings in the United States Supreme Court, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. *If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition*, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. If a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than 3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.

This limitation does not apply to a petition advancing a claim of actual innocence." (Emphasis added.) 725 ILCS 5/122-1(c) (West 2008) (as amended by Pub. Act 93-972, § 10 (eff. Aug. 20, 2004)).

¶ 20    "The applicable statute of limitations for a postconviction petition is the one in effect at the time the petition is filed." *People v. Harris*, 224 Ill. 2d 115, 125 n.1 (2007). Defendant filed his petition in July 2010. Therefore, section 122-1(c) as amended by Public Act 93-972 applies to him. See *id.*

¶ 21    Because defendant "has a sentence other than death," we should look in the second paragraph of section 122-1(c) for the applicable period of limitation. 725 ILCS 5/122-1(c) (West 2008). There were no "proceedings in the United States Supreme Court," and therefore the first sentence of that paragraph is inapplicable. *Id.* Defendant "file[d] a direct appeal," and therefore the third sentence is inapplicable. *Id.* That leaves the second sentence, the sentence both parties consider to be applicable to this case: "If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." *Id.*

¶ 22    In *Wallace*, the Second District said that "the 'date for filing a certiorari petition' could arguably be interpreted as the date for filing a petition for leave to appeal to the Illinois Supreme Court." *Wallace*, 406 Ill. App. 3d at 176 (quoting 725 ILCS 5/122-1(c) (West 2006)). That interpretation strikes us as untenable for five reasons.

¶ 23    First, in both the first and second paragraphs of section 122-1(c), the terms "petition for certiorari" and "certiorari petition" occur in the immediate context of "proceedings in the United States Supreme Court." 725 ILCS 5/122-1(c) (West 2008). "[A] word is known by the company it keeps." *Environmental Protection Agency v. Pollution Control Board*, 186 Ill. App. 3d 995, 999 (1989). Regarding the "certiorari petition" as directed to an unmentioned,

different court would seem an unnatural reading, lacking any basis in the text of section 122-1(c).

¶ 24 Second, in standard usage, a petition for leave to appeal is filed with the Supreme Court of Illinois, whereas a petition for a writ of *certiorari* is filed with the Supreme Court of the United States. Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010); Sup. Ct. R. 14; *Champaign National Bank v. Landers Seed Co.*, 194 Ill. App. 3d 1019, 1022 (1990); *In re D.W.S.*, 99 Ill. App. 3d 1035, 1041 (1981) (Stouder, J., dissenting).

¶ 25 Third, when the legislature means a petition for leave to appeal to our supreme court, the legislature says a "Petition for Leave to Appeal to the Illinois Supreme Court," as the legislature said in section 122-1(c) before amending it by Public Act 93-972. In the preamended version of section 122-1(c), the legislature used the terms "petition for certiorari" and "Petition for Leave to Appeal" to mean two different things. It seems unlikely that, in the amended version of section 122-1(c), the legislature would begin using "certiorari petition" to mean, interchangeably, a petition to the Supreme Court of the United States for a writ of *certiorari* as well as a petition to the Supreme Court of Illinois for leave to appeal.

¶ 26 Fourth, Illinois law is different from federal law in that, under federal law, a "petition for a writ of *certiorari*" is merely another name for a petition for permission to appeal (28 U.S.C. § 1257(a) (1988)), whereas, under Illinois law, *certiorari* is an extraordinary form of *relief*, like *mandamus* (705 ILCS 5/8 (West 2008)); *Bowman v. Illinois Central R.R. Co.*, 11 Ill. 2d 186, 198-99 (1957); *Hartley v. Will County Board of Review*, 106 Ill. App. 3d 950, 954-55 (1982). By granting a petition for leave to appeal, pursuant to Rule 315(a), the Supreme Court of Illinois does not issue a writ of *certiorari*, which is " '[a]n extraordinary writ.' " *Wallace*, 406 Ill. App. 3d at 176 (quoting Black's Law Dictionary 220 (7th ed. 1999) (definition of *certiorari*)). Admittedly, the Supreme Court of Illinois, out of necessity, denies more petitions for leave to appeal than it grants, but the court probably does not think of itself as issuing an "extraordinary writ" whenever it grants a petition for leave to appeal. In fact, under Illinois law, an appeal and a writ of *certiorari* are antithetical concepts: the availability of *certiorari* depends on there being no "avenue of appeal or direct review." *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 427 (1990).

¶ 27 Fifth, if "certiorari petition" could mean either a petition to the Supreme Court of the United States for a writ of *certiorari* or a petition to the Supreme Court of Illinois for leave to appeal, section 122-1(c) would be ambiguous and unworkable if a defendant filed a petition with the Supreme Court of Illinois but not with the Supreme Court of the United States. The defendant would have both filed a "certiorari petition" and not filed one.

¶ 28 For those five reasons, we conclude, *de novo*, that the terms "petition for certiorari" and "certiorari petition" in section 122-1(c) mean only a petition to the Supreme Court of the United States for a writ of *certiorari*, not a petition to the Supreme Court of Illinois for leave to appeal. See *Christmas v. Dr. Donald W. Hugar, Ltd.*, 409 Ill. App. 3d 91, 95 (2011).

¶ 29 Again, section 122-1(c) provides in part: "If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition ***." 725 ILCS 5/122-1(c) (West 2008). Defendant filed no "certiorari petition" with the Supreme Court of the United States. *Id.* Nor did he file a petition for leave to appeal with the Supreme Court of Illinois. See Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010). Because the Supreme Court of the United States would have had subject-matter jurisdiction to review our decision on direct appeal only if defendant had filed an unsuccessful petition for leave to

appeal with the Supreme Court of Illinois (see *Gonzalez v. Thaler*, 565 U.S. ___, ___, 132 S. Ct. 641, 656 (2012)), we do not see how it is possible to determine "the date," that is, the deadline, "for filing a certiorari petition" (725 ILCS 5/122-1(c) (West 2008)). A "date for filing a certiorari petition" presupposes that the Supreme Court of the United States has subject-matter jurisdiction, and the Supreme Court of the United States has subject-matter jurisdiction to review a judgment by an intermediate state appellate court only if the highest court of the state declined to review the judgment (*Gonzalez*, 565 U.S. at ___, 132 S. Ct. at 656). See also *Rose v. Lundy*, 455 U.S. 509, 518 (1982) ("Under our federal system, the federal and state courts [are] equally bound to guard and protect rights secured by the Constitution. [Citation.] *** [F]ederal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." (Internal quotation marks omitted.)).

¶ 30   For that reason, United States Supreme Court Rule 13(1) contemplates review of the judgment of a "lower state court" only if the "state court of last resort" "den[ies] discretionary review." Sup. Ct. R. 13(1). The rule provides:

> "1. Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment. A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review." *Id.*

¶ 31   We are not "a state court of last resort." *Id.* Rather, we are "a lower state court that is subject to discretionary review by the state court of last resort," *i.e.*, the Supreme Court of Illinois. *Id.* It follows that the second sentence of Rule 13(1) is applicable: "A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review." *Id.* Our decision in defendant's direct appeal would have been subject to "discretionary review" by the Supreme Court of Illinois if defendant had filed a petition for leave to appeal (see Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010)). Sup. Ct. R. 13(1). As defendant informs us, however, he never filed a petition for leave to appeal. As a result, a dilemma arises. Under Rule 13(1), the 90-day period for filing a *certiorari* petition does not begin running until the "entry of the order denying discretionary review." *Id.* If, as in the present case, the defendant filed no petition for leave to appeal and consequently obtained no order denying discretionary review, section 122-1(c) of the Post-Conviction Hearing Act (725 ILCS 5/122-1(c) (West 2008)) and, in turn, United States Supreme Court Rule 13(1) (Sup. Ct. R. 13(1)) lead, apparently, to a cul-de-sac. The deadline for filing a petition for a writ of *certiorari* does not even start running: there is no occasion for it to start running, because in the absence of an order by the state's highest court denying discretionary review, the Supreme Court of the United States lacks subject-matter jurisdiction to review the decision of a lower state court (*Gonzalez*, 565 U.S. at ___, 132 S. Ct. at 656).

¶ 32    Like the defendant in this case, the defendant in *Wallace* had filed a direct appeal but no petition for leave to appeal. *Wallace*, 406 Ill. App. 3d at 177. After interpreting "certiorari petition" to mean a petition for leave to appeal to the Supreme Court of Illinois, the Second District assumed, for the sake of argument, that "certiorari petition" meant a petition to the Supreme Court of the United States, as the defendant in *Wallace* argued. *Id.* In the absence of an order by the Supreme Court of Illinois denying discretionary review, the Second District adopted, as a period of limitation, the 21-day period for filing a petition for leave to appeal with the Supreme Court of Illinois (see Ill. S. Ct. R. 315(b) (eff. Feb. 26, 2010)). *Wallace*, 406 Ill. App. 3d at 175. (We note that, in *Wallace*, the Second District never firmly decided that "certiorari petition" meant either a petition to the Supreme Court of Illinois or a petition to the Supreme Court of the United States; the Second District merely decided that, under either interpretation, the defendant's postconviction petition was untimely. *Id.* at 178.) Because the defendant in *Wallace* had filed no petition for leave to appeal with the Supreme Court of Illinois, the Second District held he had 21 days after the judgment on direct appeal to file his postconviction petition, since, under Rule 315(b), a petition for leave to appeal had to be filed within 21 days after the judgment on direct appeal. *Id.* at 177. The Second District reasoned:

> "Defendant takes the position that the phrase 'certiorari petition' refers to a petition seeking review from the United States Supreme Court. However, defendant's postconviction petition would still be untimely under this interpretation. Under United States Supreme Court Rule 13, a 'petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk *within 90 days after entry of the order denying discretionary review.*' (Emphasis added.) Sup. Ct. R. 13. Here, defendant never sought discretionary review by the Illinois Supreme Court, so he did not have an additional 90 days in which to decide whether to appeal to the United States Supreme Court. In other words, given the fact that defendant did not file a petition for leave to appeal, the appellate court judgment became final after 21 days, and a petition for *certiorari* was not and could not have been filed with the United States Supreme Court, thus triggering the six-month clock under section 122-1(c). A contrary interpretation would not make sense, as it would give defendant an additional 90 days in which to file a postconviction petition when he did not even have the option of using that time to decide whether to file a petition for *certiorari.*" *Id.*

We do not understand what basis this conclusion has in the text of section 122-1(c). We do not find, in section 122-1(c), any reference to the 21-day period in Rule 315(b).

¶ 33    As *Wallace* observed, "section 122-1(c) provides three possible methods for calculating the deadline for filing a postconviction petition." *Id.* at 175. The first method is applicable if there were proceedings in the Supreme Court of the United States: the postconviction petition must be filed within six months after the proceedings ended. *Id.* The second method is applicable if the defendant filed no " 'certiorari petition' ": the postconviction petition must be filed within six months after the deadline for filing the " 'certiorari petition' " (*id.* (quoting 725 ILCS 5/122-1(c) (West 2006)))–and as we have discussed, this deadline exists only if "the state court of last resort" "ent[ered]" an "order denying discretionary review" (Sup. Ct. R. 13(1)). Without the entry of such an order, there would be no date from which to count the 90 days in United States Supreme Court Rule 13(1) and, consequently, no date from which to count the 6 months in section 122-1(c), under the second method (725 ILCS 5/122-1(c) (West 2008)). The

third method is applicable if the defendant filed no direct appeal: the postconviction petition must be filed no later than three years after conviction. *Wallace*, 406 Ill. App. 3d at 175.

¶ 34 Section 122-1(c) contains no fourth method, a method that would be applicable if the defendant filed a direct appeal but no petition for leave to appeal. Instead, it appears that *Wallace* created a fourth method by judicial amendment. We cannot go along with this. "Where a statute is clear and unambiguous, we cannot restrict *or enlarge* its meaning. Rather, we must interpret and apply it in the manner in which it was written. We cannot rewrite a statute to make it consistent with the court's idea of orderliness and public policy." (Emphasis added.) *In re Estate of Schlenker*, 209 Ill. 2d 456, 466 (2004). "It is a well established doctrine in construing statutes of limitations that cases within the reason but not within the words of a statute are not barred." *Helbig v. Citizens' Insurance Co.*, 234 Ill. 251, 254 (1908); see also *Hamil v. Vidal*, 140 Ill. App. 3d 201, 204 (1985) ("[A] statute of limitations is, by its very nature, an arbitrary provision which often issues diverse and seemingly capricious results. Nevertheless, it must not be enlarged by judicial action beyond its legislatively intended scope ***."); *Fess v. Parke, Davis & Co.*, 113 Ill. App. 3d 133, 135 (1983) ("[T]he court may construe only the clear words of the statute, and if its scope is to be enlarged, the remedy should be legislative rather than judicial." (Internal quotation marks omitted.)); *Fisher v. Rhodes*, 22 Ill. App. 3d 978, 982 (1974) ("It is not for judicial tribunals to extend the [statute of limitations] to all cases coming within the reason of it, so long as they are not within the letter."); 25 Ill. L. and Prac., *Limitations of Actions* § 6 (2001) ("The operation of statutes of limitations will *** not be extended to cases not expressly provided for by the statutes."); 54 C.J.S. *Limitations of Actions* § 11 (2010) ("A statute of limitations should not be applied to cases not clearly within its provisions, and it should not be extended by construction.").

¶ 35 In sum, then, we are left only with the parties' shared position that the postconviction petition was filed late. We do not understand how that position squares with section 122-1(c). Nevertheless, because a position to the contrary would be forfeited, we are obliged to regard the postconviction petition as late. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("Points not argued are [forfeited] ***.").

¶ 36 Defendant maintains that because his appellate counsel failed to notify him of our decision on direct appeal, the lateness of the postconviction petition was not the result of culpable negligence on defendant's part. We do not understand, though, exactly how defendant's unawareness of the issuance of our decision on direct appeal caused the postconviction petition to be late. It would seem that without an awareness of our decision on direct appeal, there would be no petition for leave to appeal, and without a petition for leave to appeal, there would be no denial of a petition for leave to appeal, and without a denial of a petition for leave to appeal, there would be no deadline for filing a *certiorari* petition, and without a deadline for filing a *certiorari* petition, there would be no deadline for filing a postconviction petition.

¶ 37 In short, defendant's excuse for the lateness, *i.e.*, his unawareness of our decision on direct appeal, makes no sense without an explication of section 122-1(c). Under section 122-1(c), what triggers the running of the period of limitation? What is the period of limitation? How does the issuance of our decision on direct appeal relate to that trigger? Those questions are unanswered in this appeal, and without answers to those questions, we lack the means to address the issue of culpable negligence. See 725 ILCS 5/122-1(c) (West 2008). The excuse for the lateness lacks a legal context, namely, an analysis of section 122-1(c). In the end, we are

left with only an admission of lateness, without a coherent explanation of why the lateness was not due to culpable negligence on defendant's part.

¶ 38 Defendant argues, though, in his petition for rehearing (which we granted), that *Wallace* gave him no choice but to make this admission of lateness, for, under *Wallace*, his petition for postconviction relief was indisputably late. He objects it would be unreasonable to expect him to have forecasted our disagreement with *Wallace*.

¶ 39 Fair enough, but in his brief, defendant did not even cite *Wallace* or provide any analysis of section 122-1(c). That is our point. His argument was materially incomplete. Without a fully reasoned argument, he failed to establish that the lateness of his postconviction petition was not due to his own culpable negligence. Therefore, in response to defendant's petition for rehearing, we adhere to our decision affirming the trial court's judgment.

¶ 40                                    III. CONCLUSION

¶ 41 For the foregoing reasons, we affirm the trial court's judgment. We award the State $50 in costs against defendant.

¶ 42 Affirmed.